1:23mj3153

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Marc Kudley, DO HEREBY DEPOSE AND SAY:

### Introduction and Affiant Background

1. As a United States Postal Inspector, I am an investigative law enforcement officer of the United States of America within the meaning of Title 18, United States Code, Section 2510(7). I am empowered by law to conduct investigations of, and to make arrests for, offenses related to the United States Postal Service (USPS) and the mails, as authorized by Title 18, United States Code, Section 3061.

2. I have been employed by the U.S. Postal Inspection Service (USPIS) for approximately 11 years and have been assigned to the Cleveland Field Office for each of those years. During this time, I have been assigned to the Contraband Interdiction and Investigations team, which investigates the mailing of illegal drugs and their proceeds. I have been the case agent in multiple investigations leading to convictions in both U.S. District Court and state courts. In January 2023, I began working with the Drug Enforcement Administration (DEA) in Cleveland, Ohio, as a Task Force Agent.

3. This affidavit is in support of a criminal complaint against George Edward SMITH (hereinafter "SMITH").

4. Because this affidavit is submitted for the limited purpose of supporting a criminal complaint and arrest warrant, I have not included each and every fact known concerning this investigation. I have set forth only the facts I believe necessary to establish probable cause that on or about May 19, 2023, in the Northern District of Ohio, SMITH has committed violations of Title 21, United States Code, Section 841(a)(1), (b)(1)(B) and 846, Attempted possession with the intent to distribute cocaine, a Schedule II Controlled Substance.

**Probable Cause**

5. I know based on training and experience that U.S. Mail is often used by narcotic traffickers to transport controlled substances, proceeds derived from the sale of controlled substances, and other contraband such as firearms. I know from my training and experience that the USPS Priority Mail system is commonly used to transport controlled substances, proceeds derived from the sale of controlled substances, and other contraband because Priority Mail provides traceability, reliability, and timely delivery. The guaranteed delivery timeframe of approximately two to three days for Priority Mail places time pressures on law enforcement agents to identify, search, and deliver these drug parcels in a timely manner.

6. On May 16, 2023, while reviewing USPS business records, I identified USPS Priority Mail parcel bearing label 9505 5125 9657 3135 0872 20, addressed to Thomas R. Webb, 16007 Lotus Dr., Cleveland, Ohio 44128, with a return address of Miguel Ortiz, 17154 Main St., Hesperia, CA 92345 (hereinafter "Parcel 1"). Parcel 1 is described as a white USPS Priority Mail Medium Flat Rate Box measuring approximately 12" X 3.5" X 14.125" in size and weighing approximately two pounds and seven ounces. I identified Parcel 1 as a suspect drug parcel based on several characteristics, including but not limited. to type of mail, origin, destination, and size. Parcel 1 was mailed on May 15, 2023, from the Hesperia, California 92345 Post Office and bore $17.10 in U.S. Postage. I know based on training and experience that California has historically been a source area for mailed controlled substances into Northern Ohio.

7. I made inquiries with CLEAR, an electronic database that has proven reliable in previous investigations in determining the legitimacy of name, address, and phone number information, concerning the delivery address of 16007 Lotus Dr., Cleveland, OH 44128, and

was unable to associate an individual with the name Thomas Webb at the listed delivery address. I also made inquiries with CLEAR concerning the return address of 17154 Main St., Hesperia, CA 92345, and was unable to associate an individual with the name Miguel Ortiz at the listed return address. According to open source internet records, Beaver Town, a gift shop is located at the listed return address. Additional information ascertained from open source internet searches indicated Beaver Town sold tobacco vape accessories.

  8. I know based on training and experience, that individuals using the U. S. Mail for the purpose of transporting controlled substances will often place fictitious address, name and/or phone number information, different variations of their names, initials, or no names at all on these parcels, to conceal their true identities from law enforcement should the parcel be seized.

  9. Parcel 1 was in the U.S. Mail stream enroute to Cleveland, Ohio, when I identified it via USPS records. On the morning of May 17, 2023, Parcel 1 was identified and removed from the U.S. Mail stream at the USPS Processing & Distribution Center in Cleveland, Ohio, and subsequently transported to the USPIS Cleveland, Ohio Field Office for further investigation.

  10. Later on May 17, 2023, at the USPIS Cleveland, Ohio Field Office, Parcel 1 was placed into a lineup containing several blank parcels which emanated no narcotics odors. Narcotic detection canine "Atilla", handled by Detective Michael Twombly of the Cuyahoga County Sheriff's Office was allowed to examine the lineup. According to Detective Twombly, Atilla gave a positive alert on Parcel 1 and none of the blank parcels, which was witnessed by your Affiant. According to Detective Twombly, this positive alert meant Atilla detected the odor of an illegal drug emanating from Parcel 1.

11. On May 17, 2023, I applied for and obtained federal search warrant 1:23MJ3142 through the United States District Court for the Northern District of Ohio. The warrant was signed by the Honorable Thomas M. Parker, U.S. Magistrate Judge, authorizing the search of Parcel 1. I executed the federal search warrant and recovered a compressed off-white material weighing approximately 595 grams in several clear vacuum sealed food saver bags. The compressed material appeared to be one half of a kilogram "brick" of cocaine that was cut in half. The compressed material was secreted into a USPS envelope and two smaller USPS boxes. The compressed off-white material was field tested and tested positive for cocaine, a Schedule II controlled substance.

12. On May 16, 2023, while reviewing USPS business records, I identified USPS Priority Mail parcel bearing label 9505 5126 9426 3135 4359 47, addressed to Patty A. Bradley, 2358 High Point Rd., Cuyahoga Falls, OH 44223, with a return address of Juan Ramirez, 13728 Hesperia Rd., Victorville, CA 92395 (hereinafter "Parcel 2"). Parcel 2 is described as a white USPS Priority Mail Medium Flat Rate Box measuring approximately 12" X 3.5" X 14.125" in size and weighing approximately two pounds and six ounces. I identified Parcel 2 as a suspect drug parcel based on several characteristics, including but not limited to type of mail, origin, destination, and size. Parcel 2 was mailed on May 15, 2023, from the Victorville, California 92395 Post Office and bore $17.10 in U.S. Postage.

13. I made inquiries with CLEAR, concerning the delivery address of 2358 High Point Rd., Cuyahoga Falls, OH 44223, and was unable to associate an individual with the name Patty Bradley at the listed delivery address. I also made inquiries with CLEAR concerning the return address of 13728 Hesperia Rd., Victorville, CA 92395, and was unable to associate an individual with the name Juan Ramirez at the listed return address. According to open source

internet records, a strip mail with several businesses is located at the listed return address.

14. Parcel 2 was in the U.S. Mail stream enroute to Cuyahoga Falls, Ohio, when I identified it via USPS records. On the morning of May 18, 2023, Parcel 2 was identified and removed from the U.S. Mail stream at the Cuyahoga Falls, Ohio Post Office.

15. Shortly thereafter on May 18, 2023, at the Cuyahoga Falls, Ohio Post Office, Parcel 2 was placed into a lineup containing several blank parcels which emanated no narcotics odors. Narcotic detection canine "Bella", handled by Detective Chris Carney of the Akron Police Department Narcotics Unit was allowed to examine the lineup. According to Detective Carney, Bella gave a positive alert on Parcel 2 and none of the blank parcels, which was witnessed by your Affiant. According to Detective Carney, this positive alert meant Bella detected the odor of an illegal drug emanating from Parcel 2.

16. On May 18, 2023, I applied for and obtained federal search warrant 1:23MJ3144 through the United States District Court for the Northern District of Ohio. The warrant was signed by the Honorable Thomas M. Parker, U.S. Magistrate Judge, authorizing the search of Parcel 2. I executed the federal search warrant and recovered a compressed off-white material weighing approximately 560 grams in several clear vacuum sealed food saver bags. The compressed material appeared to be the other half of the "brick" of cocaine that was recovered from Parcel 1. The compressed material was secreted into a USPS envelope and two smaller USPS boxes. The compressed off-white material was field tested and tested positive for cocaine, a Schedule II controlled substance.

17. I know based on experience that persons and DTOs using the U.S. Mail to distribute controlled substances have utilized multiple parcels mailed to different addresses to move their product, instead mailing the entirety of their product in one parcel, so that if the

parcel is seized or lost, they do not lose all of the supply. Based on my training and experience, the amounts of the controlled substances seized from both parcels are consistent with a distribution quantity.

18. I believe the multiple parcel method was used in this particular investigation, wherein one kilogram of cocaine was split among two separate USPS parcels instead of mailing the kilogram in one parcel. I was able to relate Parcel 1 with Parcel 2 based on the following: 1) the two parcels bore similar handwriting and punctuation in blue pen; 2) the parcels were mailed from Victorville, California and Hesperia, California respectively, which are neighboring towns in the High Desert area of California, and 3) the parcels were mailed approximately 20 minutes apart from each other.

19. On May 18, 2023, DEA Special Agent Jon Fraser conducted surveillance at 16007 Lotus Dr. in Cleveland, Ohio (hereinafter "Lotus Residence"), and observed a 2018 black GMC Sierra truck, bearing Ohio registration tag JVY8815, registered to George SMITH, 16908 Walden Ave., Cleveland, OH 44128, in the driveway of the Lotus Residence. DEA investigators conducted further records queries and identified that George SMITH's daughter, Gelisa Greer, currently resides at 2358 High Point Rd. in Cuyahoga Falls, Ohio, the delivery address of Parcel 2. Therefore, agents/investigators believed George SMITH was the intended recipient of both parcels.

20. On May 19, 2023, the USPIS and DEA conducted a controlled delivery of Parcel 1 to the Lotus Residence. Approximately 5 grams of the original cocaine was placed back into Parcel 1 in advance of the controlled delivery. Additionally, technical equipment that alerted law enforcement investigators if/when Parcel 1 was opened and/or moved, was placed in Parcel 1.

21. At approximately 10:36 a.m., the 2018 GMC truck registered to George SMITH arrived at the Lotus Residence and backed into the driveway. At approximately 10:38 a.m., investigators observed SMITH sitting on the front porch. Investigators then observed SMITH walking around the property with his dog. At approximately 10:47 a.m., SMITH departed in his GMC truck and drove directly to a Gyro George, a restaurant located at 3695 Lee Rd. in Cleveland, Ohio. Investigators observed SMITH enter Gyro George and depart minutes later without carrying anything.

22. Investigators followed SMITH in his GMC truck directly to 16908 Walden Ave. in Cleveland, Ohio (hereinafter "Walden Residence"), arriving at approximately 10:56 a.m. Approximately two minutes later, SMITH departed the Walden Residence in the GMC truck. Investigators observed Smith drive directly to Gyro George. At approximately 11:13 a.m., investigators observed SMITH depart Gyro George and drive to a shopping plaza located near Lee Rd. and Chagrin Blvd. in Shaker Heights, Ohio. Investigators subsequently observed SMITH inside the Verizon store located at 16699 Chagrin Blvd. in Shaker Heights, Ohio.

23. At approximately 11:20 a.m., while SMITH was inside the Verizon store, a Postal Inspector acting in the undercover capacity as a USPS letter carrier, delivered Parcel 1 to the Lotus Residence. The undercover Inspector knocked on the front door and then delivered Parcel 1 to the Lotus Residence when there was no answer, by placing it on the front porch. The undercover Inspector departed the area.

24. At approximately 11:34 a.m., a black male wearing a light colored shirt and light colored pants, later identified as Pernell L. Ponius, opened the front door at the Lotus Residence. Ponius appeared to handwrite something on Parcel 1 and then brought Parcel 1 into the Lotus Residence and closed the door.

7

25. At 11:40 a.m., Ponius, now wearing a white tee-shirt, dark colored pants, and white shoes, exited the Lotus Residence via the side door. Ponius hastily returned to the Lotus Residence through the side door, and then exited moments later. Ponius then walked down Lotus Dr. past a school and onto Miles Playfield, where he was observed manipulating cellular phones. Ponius did not have Parcel 1 in his possession and investigators believed Parcel 1 remained in the Lotus Residence at this time. Investigators lost surveillance of Ponius after he departed Miles Playfield.

26. At approximately 12:31 p.m., Ponius returned to the Lotus Residence from the east, carrying what appeared to be a bag of food. Ponius entered the Lotus Residence through the side door.

27. At approximately 12:43 p.m., investigators observed SMITH exit the Verizon store holding a white bag. SMITH entered his GMC truck and departed the area and drove directly to the Lotus Residence. At approximately 12:51 p.m., SMITH parked the GMC truck in front of the Lotus Residence. SMITH exited the GMC truck and walked into the Lotus Residence through the side door.

28. At approximately 1:07 p.m., SMITH and Ponius exited the Lotus Residence with SMITH carrying Parcel 1. SMITH placed Parcel 1 inside the GMC truck and both males departed in the truck with SMITH driving. SMITH and Ponius drove directly to the Walden Residence, arriving at approximately 1:14 p.m, and parked in the driveway. Investigators observed both males exit the GMC truck and then Ponius retrieve Parcel 1 from the truck. SMITH and Ponius entered the Walden Residence with Ponius carrying Parcel 1. At approximately 1:20 p.m., investigators received an alert from the technical equipment in the Parcel 1 that it had been opened.

29. Next, investigators approached the Walden Residence, in an effort to secure the premises, maintain the status quo of evidence, and await a search warrant. Investigators, clearly wearing vests identifying themselves as law enforcement officers, knocked on the side door, identified themselves as law enforcement officers, and announced for the SMITH and/or Ponius to open the door. SMITH and Ponius failed to comply and did open the door or exit the residence.

30. Officers set up a perimeter around the Walden Residence and continued to call out SMITH and Ponius. Approximately ten minutes later, Ponius exited the residence via the side door. Ponius was detained by law enforcement officers in the front of the Walden Residence. A wallet and cellular phone were recovered from Ponius' person. Approximately five minutes later, SMITH exited the side door and was detained by law enforcement officers in the driveway of the Walden Residence. Investigators recovered a cellular phone from SMITH's person. Neither individual was in possession of Parcel 1, leading investigators to believe it was still in the Walden Residence.

31. Investigators entered the Walden Residence and conducted a protective sweep for weapons and persons. Investigators believed it was necessary to act in this fashion to preserve evidence, protect the public and as a matter of officer safety. When conducting the protective sweep, investigators observed a door locked on the second story of the residence. Officers were able to open the door and observed several firearms, including a riffle, shotgun, and handgun in a closet. Officers also observed a white USPS box resembling Parcel 1, in a closet on the other side of the same hallway, which appeared to have been intentionally hidden there.

32. Investigators verbally advised SMITH of his *Miranda Rights*. SMITH

acknowledged he understood his *Miranda Rights* and willingly agreed to answer questions. SMITH claimed ownership of Parcel 1 and its contents and stated his younger brother, Ponius, had no involvement. SMITH stated he traveled to California to purchase one kilogram of cocaine for $13,000. SMITH said he split the kilogram of cocaine in half and mailed it in two separate USPS parcels. SMITH said he mailed one half to his residence (Parcel 1), and on half to his daughter's residence (Parcel 2), because he was worried USPS employees would steal it, so he wanted to make sure at least one parcel was delivered. SMITH said he hid the contents of Parcel 1 under the first step of the attic stairs.

33. I applied for and obtained federal search warrant 1:23MJ3149 through the United States District Court for the Northern District of Ohio. The warrant was signed by the Honorable Thomas M. Parker, U.S. Magistrate Judge, authorizing the search of the Walden Residence. Investigators searched the Walden Residence, recovering Parcel 1, the packaging, and the representative sample hidden throughout the residence. Investigators recovered several firearms and approximately one ounce of suspected cocaine in a clear baggie from an icebox in the garage.

34. Based on the information contained in this affidavit, I believe there is probable cause to believe that on May 19, 2023, in the Northern District of Ohio, SMITH has committed violations of Title 21, United States Code, Section 841(a)(1), (b)(1)(B), and 846, Attempted possession with the intent to distribute cocaine.

MARC A. KUDLEY
POSTAL INSPECTOR

Sworn to via telephone after submission by reliable electronic means. Crim.Rules. 4.1; 41(d)(3)



Thomas M. Parker
United States Magistrate Judge
**10:14 AM, May 22, 2023**

11